IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| MONICA PETERS-CLARK, PH.D.,  *Plaintiff* | § § § | |
| V. | § § | CIVIL ACTION NO. 9:23-CV-100 |
| ANGELINA COLLEGE,  *Defendant* | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Monica Peters-Clark, Ph.D. ("Plaintiff" or "Dr. Peters-Clark") complaining of Angelina College ("Defendant" or "AC") and for cause of action would respectfully show unto this Honorable Court as follows:

1. This is an action brought pursuant to Title VII of the Act of Congress known as the *Civil Rights Act of 1964*, as amended, 42 U.S.C. § 2000e *et seq.*, and particularly as amended by the *Civil Rights Act of 1991* (hereinafter "Title VII"), and 42 U.S.C. § 1981 to correct unlawful discrimination practices in the workplace based on race which have been engaged in by Defendant to the detriment of Plaintiff.

2. This action is also brought pursuant to Title VII to correct unlawful retaliation.

3. Plaintiff also asserts state law claims for race discrimination and unlawful retaliation in violation of Chapter 21 of the *Texas Labor Code*.

### A. PARTIES

4. Plaintiff in this action is Dr. Monica Peters-Clark, who is a citizen of the State of Texas, and a resident of Lufkin, Texas. Plaintiff is an African American female.

5. Defendant, Angelina College, is a public community college created under the laws of the State of Texas with its principal office located at 3500 South First Street, Lufkin, Texas 75901.

Defendant is what is referred to in the *Texas Education Code* as a "Junior College District." *See* TEX. EDUC. CODE Chapter 130. Defendant may be served with process by serving its current President, Michael Simon, Ed.D. at 3500 South First Street, Lufkin, Texas 75901.

### B.   JURISDICTION

6. The Court has jurisdiction over this action because it arises under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq*. *See* 42 U.S.C. § 2000e5-(f)(3) (stating that United States District Courts shall have jurisdiction over actions brought under Title VII). In other words, there is federal-question jurisdiction. *See* 28 U.S.C. § 1331.

7. The Court has supplemental or pendant jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under Chapter 21 of the *Texas Labor Code*.

### C.   VENUE

8. Venue is proper in the Eastern District of Texas, Lufkin Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

9. Venue is also proper in the Eastern District of Texas, Lufkin Division under 42 U.S.C. § 2000e5-(f)(3) because Defendant's unlawful employment practices were committed in this state.

### D.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff has complied with all pre-requisites for bringing an action under Title VII. Specifically, Plaintiff timely filed charges of discrimination against AC with the Equal Opportunity Employment Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWCCRD"). *See* Exhibit A. Plaintiff files this complaint within 90 days of receiving notice of the right to sue from the EEOC. A copy of the notice of the right to sue is

attached as Exhibit B. *See* 42 U.S.C. § 2000e5-(f)(1). All other conditions precedent have been satisfied.

### E. RACIAL DISCRIMINATION UNDER TITLE VII

11. Plaintiff is an employee within the meaning of Title VII. *See* 42 U.S.C. § 2000e-(f). Plaintiff also belongs to a class protected under this statute; namely, Plaintiff is African American.

12. Defendant AC is an employer within the meaning of Title VII. *See* 42 U.S.C. § 2000e-(a).

13. AC is a public community college serving multiple counties in Deep East Texas.

14. On or about February 28, 2022, Dr. Peters-Clark applied for the "Executive Director of Institutional Effectiveness" position at AC (hereinafter, "the position").

15. This was a new position created by AC. AC posted the position on or about February 18, 2022.

16. Dr. Peters-Clark was well qualified for the position. She had previously served in positions responsible for Institutional Effectiveness at AC from approximately 2006 to November 2016.[1]

17. In November 2016, Angelina College President Michael Simon, Ed.D. (a white male) reassigned Dr. Peters-Clark to the position of "Coordinator of Quality Enhancement and Innovative Projects."

18. In 2017, AC "eliminated" Dr. Peters-Clark's position was "eliminated." AC then created a "new" position out of Dr. Peters-Clark's "eliminated" position. AC then hired a white female to fill that position.

---

[1] The exact title of Dr. Peters-Clark's position varied somewhat over those years.

19. Dr. Peters-Clark filed an EEOC Charge against AC and ultimately a federal lawsuit against AC and President Simon over these actions. *See Peters-Clark v. Angelina College*, *Michael Simon, and Cynthia Casparis*, No. 9:20-CV-00031-MJT-ZJH (E.D. Tex. – Lufkin).[2]

20. Going back to the "Executive Director of Institutional Effectiveness" position, AC closed the position to new applicants on March 4, 2022.

21. The next Tuesday, March 7, 2022, Dr. Peters-Clark contacted AC Human Resources regarding the position and asked when the screening and interview process was going to begin. AC Human Resources told Dr. Peters-Clark "before spring break." AC's spring break began on March 11, 2022.

22. Sometime after that conversation, Dr. Peters-Clark learned that by the time she contacted HR on March 7, 2022, three interviews had already been conducted. In other words, HR's statement that the process was going to begin "before spring break" was misleading, if not an outright falsehood.

23. On March 9, 2022, HR contacted Dr. Peters-Clark and asked her to interview for the position that morning.[3]

24. After some discussion regarding scheduling, HR eventually scheduled Dr. Peters-Clark's interview for March 10, 2022.

25. On March 10, 2022, Dr. Peters-Clark had a video-conference interview with members of the screening committee.

---

[2] Dr. Peters-Clark, who is not an attorney, represented herself *pro se*. While Dr. Peters-Clark was able to overcome AC's motions to dismiss, the lawsuit was eventually dismissed at the summary judgment stage on or about March 10, 2022.

[3] Absent extraordinary or emergency circumstances, it is highly unusual to ask a candidate for a senior-level position to interview for a position with no prior notice.

26. Dr. Peters-Clark was shocked to see Dr. Simon on the interview committee because it is highly unusual for a College President to serve on a screening committee for any position. This is because the President is who accepts the screening committee's recommendations and makes the ultimate decision. Even more strange, not only was Dr. Simon on the committee, but he was also chairing the committee.

27. Moreover, many of the members of the screening committee had nothing to do with "Institutional Effectiveness."

28. Dr. Peters-Clark nevertheless proceeded with the interview and hoped for the best.

29. The next day, Dr. Peters-Clark saw Winifred Adams, who is the Dean of Health Careers at Angelina College.

30. Ms. Adams told Dr. Peters-Clark that she (Ms. Adams) had spoken with Dr. Sandra Brannan, the Director of Nursing and a member of the screening committee, about a week prior— *i.e.*, before Dr. Peters-Clark's interview on March 10, 2022.

31. Dr. Brannan made the comment to Ms. Adams that they were interviewing applicants and that "I don't even know why this one person applied because they were fired because of plagiarism." Dr. Brannan confirmed that Dr. Peters-Clark was the applicant that she was referring to. Dr. Brannan also told Ms. Adams that there was a discussion among the screening committee about whether to even interview Dr. Peters-Clark at all.

32. To be clear, Dr. Peters-Clark has never been fired because of plagiarism or anything of the sort. Further, Dr. Brannan was not even employed at AC when Dr. Peters-Clark worked at AC, so Dr. Brannan had to have gotten that information from someone else on the screening committee.

33. Ms. Adams also told Dr. Peters-Clark that Jennifer Baldauf—currently the Director of Dual Credit—told her (Ms. Adams) that Sarah Simon, President Simon's wife and an employee of AC

at the time, made the comment before the search even began that Dr. Simon was going to hire her friend, a woman white named Joy Row from Temple College for the position.

34. After several weeks, Dr. Peters-Clark heard nothing about the position or her interview, so Dr. Peters-Clark sent several emails to HR on April 5, 2022, and April 12, 2022, with no response.

35. On April 15, 2022, Dr. Peters-Clark received an email stating that she was not selected for the position.

36. Subsequently, Dr. Peters-Clark learned Joy Row actually accepted the position on or about March 12, 2022—two days after Dr. Peters-Clark's interview—and began work at AC on or about March 28, 2022. Thus, Dr. Peters-Clark's interview was a sham.

37. Accordingly, HR knew prior to Dr. Peters-Clark's April 5, 2022 email that she had not been selected for the position but waited over 10 days to tell her.

38. On April 18, 2022, AC formally announced at its Board Meeting that Joy Row had been hired for the position.

39. Prior to being hired, Ms. Row held the title of "Senior Data Analyst" in Temple College's Office of Institutional Effectiveness, Research, and Planning. Dr. Peters-Clark worked in Institutional Effectiveness for over 10 years at AC. Ms. Row had only been working in the area since March 2019—approximately three years. Ms. Row also only has a master's degree, whereas Dr. Peters-Clark holds a doctoral degree. Dr. Peters-Clark was clearly better qualified for the position than Ms. Row.

40. Dr. Peters-Clark subsequently filed an internal complaint with AC regarding her non-selection for the position as well as AC not following procedures and engaging in discriminatory hiring practices.

41. Based on information and belief and to Dr. Peters-Clark's knowledge, since Dr. Patricia McKenzie (African-American female) retired in 2016, AC has hired no women of color to any executive level—*i.e.*, Vice-President or Executive Director positions. Many qualified women of color have applied for executive positions, yet in over 6 years none have been hired.

42. AC discriminated against Plaintiff because of her race, in violation of Title VII, by not selecting Plaintiff for a position for which she was the best qualified applicant. Instead, AC selected Ms. Row, a white female who had far less qualifications than Plaintiff.

43. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

44. As a result of the foregoing unlawful discriminatory practices of AC, Plaintiff was discriminated against based on her race. Due to the actions of AC, Plaintiff has suffered and will continue to suffer damages and is, therefore, entitled to recover damages for mental anguish, actual and compensatory damages, lost wages, and past and future damages.

45. To the extent that Defendant contends that Plaintiff was not selected for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.

46. Alternatively, if the reason(s) given for Plaintiff's non-selection were true, those are only some of the reasons, and Plaintiff's race was a motivating factor in the decision to not select her. In other words, Defendant had mixed motives for not selecting Plaintiff for the position.

47. Plaintiff asserts that any alleged legitimate non-discriminatory motive for not selecting Plaintiff is, in reality, racial stereotyping masking race discrimination.

48. In short, Dr. Peters-Clark is a member of a protected class—African American; Dr. Peters-Clark was qualified for the position; Dr. Peters-Clark was not selected for the position despite being clearly qualified; and a white applicant with less qualifications was selected. That is a *prima*

*facie case* of race discrimination under Title VII, Section 1981 and Chapter 21 of the *Texas Labor Code*.

### F. RACIAL DISCRIMINATION UNDER 42 U.S.C. §1981

49. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs and asserts these allegations with facts necessary as to the claims for racial discrimination under 42 U.S.C. §1981.

50. Plaintiff is a member of a protected class; namely, she is African American.

51. At all times relevant, Plaintiff sought a contractual relationship with AC within the meaning of 42 U.S.C. §1981. An employee subject to at-will termination under Texas law nevertheless has a "contract" with his employer, as required to maintain a § 1981 racial discrimination action against employer. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050 (5th Cir. 1998).

52. AC discriminated against Plaintiff by not selecting her for the position because she was African American.

53. As a result of the foregoing unlawful discriminatory practices of AC, Plaintiff was discriminated against based on her race. Due to the actions of AC Plaintiff has suffered and will continue to suffer damages and is therefore entitled to recover damages for mental anguish, actual and compensatory damages, lost wages, and past and future damages.

### G. UNLAWFUL RETALIATION UNDER TITLE VII

54. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs and asserts these allegations with facts necessary as to the claims for violations of Title VII for unlawful retaliation.

55. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is African American. *See* 42 U.S.C. §2000e(f).

56. Defendant is an employer within the meaning of Title VII. *See* 42 U.S.C. §2000e(b).

57. Plaintiff engaged in a Title VII protected activity, namely Plaintiff filed a previous lawsuit for violations of Title VII and Section 1981 against AC. *See Peters-Clark v. Angelina College, Michael Simon, and Cynthia Casparis*, No. 9:20-CV-00031-MJT-ZJH (E.D. Tex. – Lufkin).

58. Plaintiff was subjected to an adverse employment action, namely she was denied a position for which she was the clearly better qualified applicant during the pendency of that suit and less than 35 days of that suit being dismissed.

59. There is a but-for connection between Plaintiff's prior race discrimination lawsuit and AC not selecting her for the position.

60. Further, it is obvious from Dr. Brannan's comment that Dr. Peters-Clark was allegedly "fired for plagiarism" that the screening committee, chaired by Dr. Simon, held retaliatory animus or bias against Dr. Peters-Clark.

61. To the extent that Defendant contends that Plaintiff's non-selection was based on a legitimate non-discriminatory reason, said reason is a mere pretext for retaliation.

62. Alternatively, the reason(s) given for Plaintiff's non-selection, while true, are only some of the reasons, and Plaintiff's protected activity was a motivating factor in the decision. In other words, Defendant had mixed motives for treating Plaintiff in this manner.

### H. VIOLATIONS OF CHAPTER 21 OF THE *TEXAS LABOR CODE*

63. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs and asserts these allegations with facts necessary as to the claims for violations of Chapter 21 of the *Texas Labor Code*.

64. Chapter 21 of the *Texas Labor Code* (hereinafter, "Chapter 21") is a state-law corollary to Title VII.

65. Dr. Peters-Clark is an employee within the meaning of Chapter 21.

66. Dr. Peters-Clark is African American and is a member of a protected class under Chapter 21.

67. AC is an employer within the meaning of Chapter 21.

68. AC discriminated against Dr. Peters-Clark based on her race. Specifically, AC denied Dr. Peters-Clark the position based on race and selected a less qualified white female for the position.

69. Accordingly, Dr. Peters-Clark pleads a *prima facie* case of race discrimination under Chapter 21: (1) Dr. Peters-Clark is a member of the protected class, (2) she was qualified for the position, (3) she was not selected by AC, and (4) AC selected someone from outside the protected class—a white female—for the position.

70. AC also engaged in unlawful retaliation against Dr. Peters-Clark. Specifically, AC denied Dr. Peters-Clark the position based on prior protected activities, namely filing a race discrimination lawsuit against AC.

71. Accordingly, Dr. Peters-Clark pleads a *prima facie* case of unlawful retaliation under Chapter 21: (1) Dr. Peters-Clark engaged in a protected activity, (2) Dr. Peters-Clark suffered an adverse employment action—i.e., she was not selected for the position for which she was well-qualified, and (3) AC denied Dr. Peters-Clark the position in close temporal proximity of her protected activities.

72. As a direct and proximate result of Defendant's unlawful conduct, Dr. Peters-Clark suffered damages.

73. To the extent that Defendant contends that Plaintiff's non-selection was based on a legitimate non-discriminatory reason, said reason is a mere pretext for race discrimination and/or unlawful retaliation.

74. Alternatively, the reason(s) given for Plaintiff's non-selection, while true, are only some of the reasons, and Plaintiff's race and/or protected activity was a motivating factor in the decision. In other words, Defendant had mixed motives for treating Plaintiff in this manner.

### I. ATTORNEY'S FEES

75. Plaintiff is entitled to an award of attorney's fees for her Title VII, § 1981, and Chapter 21 claims under Title VII, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988.

### J. JURY DEMAND

76. Plaintiff respectfully demands a trial by jury and has tendered the appropriate fee for same.

### K. DAMAGES

77. As a direct and proximate result of AC's discriminatory conduct, Plaintiff suffered the following injuries and damages:

   a. Plaintiff was not selected for a position for which she was well-qualified because of her race and/or a retaliatory animus by AC resulting in lost pay and benefits. Plaintiff seeks to recover all actual damages, including but not limited to back pay, front pay, and compensation for past, present, and future lost benefits, including loss of Social Security benefits.

   b. Placement of Plaintiff into the position that she was unlawfully denied is impractical and unworkable. Therefore, Plaintiff seeks an award of front pay and retirement benefits to compensate her.

    c.    Plaintiff seeks compensatory damages available for stress, mental anguish, damage to name and reputation, loss of enjoyment of life, and distress suffered due to AC unlawfully denying her the position. Plaintiff seeks recovery of all available compensatory damages to which she is entitled.

    d.    As set forth above, Plaintiff is entitled to her costs of suit and reasonable and necessary attorney's fees.

    e.    Plaintiff also seeks prejudgment interest on all lost wages and benefits and post judgment interest on all sums, including attorney's fees.

## L.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant Angelina College be cited to appear and answer herein, and that upon final trial hereof, the Court:

    a.    Award Plaintiff actual damages due to her under the law, including but not limited to back pay, front pay, and compensation for past, present and future lost benefits;

    b.    Compensatory damages;

    c.    Damages for mental anguish;

    e.    Reasonable attorney's fees;

    f.    Costs of suit; and

    g.    All other relief the Court deems appropriate.

Respectfully submitted,

**HIGHTOWER, FRANKLIN, & JAMES, PLLC**

/s/ *Tanner Franklin*
Tanner G.M. Franklin
Texas Bar No. 24082506
tanner@thegoodlawyer.com
115 South Street

Nacogdoches, Texas 75961
(936) 560-3300 – Telephone
(936) 560-5600 – Fax

**ATTORNEYS FOR PLAINTIFF**